**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JESSICA KENDALL *et al.*,          :
                                   :
      Plaintiffs,                :
                                   :
v.                                 :          CIVIL ACTION NO.
                                   :          1:13-CV-04263-RWS
ALVIN SUTHERLAND *et al.*,         :
                                   :
      Defendants.                :


## ORDER

This case comes before the Court on Defendant Cobb County's Motion to

Dismiss [18], Defendant Sheriff Warren's Motion to Dismiss [19], Plaintiffs'

Motion to Amend the Complaint [27], and Defendant WellStar Health Network,

Inc.'s Motion for Reconsideration [47].  After reviewing the record, the Court

enters the following Order.

### Background

This civil rights action arises out of sexual abuse of inmates by two

guards at the Cobb County Adult Detention Center ("CCADC") from late 2010

until early 2013.  Plaintiffs Jessica Kendall, Kimberly McLaughlin,

Alexzandrea Brooks, Stacey Mitchell, and Elizabeth Daley were all either

pretrial detainees or serving their sentences at the CCADC at the time the assaults occurred.  Plaintiffs sue Cobb County, Sheriff Neil Warren, and the two perpetrators of the abuse, Sergeant Kristopher Travitz and Sergeant Alvin Sutherland, pursuant to 42 U.S.C. § 1983 and several state-law causes of action. Sheriff Warren is the Sheriff of Cobb County and is in charge of the CCADC. Travitz and Sutherland were sheriff's deputies working at the jail.

Travitz sexually assaulted Plaintiffs Daley and Mitchell between approximately November 17, 2010, and January 2, 2011.  (First Am. Compl., Dkt. [11] ¶ 56.)  Before Defendants committed these assaults, inmates filed several complaints on November 5, 2010, against Travitz based on his sexual misconduct with inmates.  (Second Am. Compl., Dkt. [26] ¶ 21.)[1]  As a result of these complaints, Plaintiffs allege Sheriff Warren knew that Travitz acted inappropriately with inmates before Travitz abused Daley and Mitchell.  (Id.) Travitz would enter the Women's Work Release Unit late at night to abuse

---

[1]Plaintiffs move to amend their complaint a second time.  The Court cites relevant allegations from the proposed Second Amended Complaint in the Background and examines the sufficiency of those allegations in the Discussion section, *infra*.

Daley and Mitchell, and at other times he took his victims to secluded parts of the CCADC.  (Id. ¶¶ 52-54.)

Eventually, several deputies at the CCADC confronted Travitz about his inappropriate contact with Mitchell and demanded to know why he was providing Mitchell with passes to leave the CCADC at irregular hours.  (Id. ¶ 54.)  At some point during the period of abuse, Travitz told Mitchell that a deputy had "snitched" on him and he was in trouble.  (Id. ¶ 55.)  Still, Travitz continued his pattern of abusive conduct with the knowledge of female sheriff's deputies on duty in the Women's Work Release Unit.  (Id.)  Deputies continued to question Mitchell about why Travitz frequently called her out of work to talk to her and frequently gave her passes, but they never "escalated their concerns so that the conduct could be investigated internally or externally."  (Id. ¶ 56.)

Over a year later, another deputy named Sutherland started abusing inmates, too.  In January or February 2012, an inmate at the CCADC became upset in her cell and started yelling at nurses, Sutherland, and other deputies who were present.  (Id. ¶ 22.)  She yelled that a guard had been trying to get inmates to perform sex acts on him, and when she saw Sutherland, she

3

exclaimed, "There's that motherfucker right there."  (Id.)  Nobody investigated this complaint.  (Id.)

Sutherland then raped Plaintiff McLaughlin over a nine-month period from April 2012 to January 2013.  (Id. ¶ 44.)  Another deputy transported McLaughlin to different locations in the jail where Sutherland was working to help Sutherland carry out his attacks.  (Id.)  McLaughlin informed a fellow inmate, Latrice Jackson, about this abuse, and she in turn told a guard in August 2012 that Sutherland had been abusing McLaughlin, but nobody followed up on this report.  (Id. ¶ 45.)  Around September 11, 2012, Jackson filed a complaint with the CCADC about Sutherland and his relationship with McLaughlin.  (Id. ¶ 46.)  Jackson continued to tell other deputies about her concerns and ultimately filed six grievances in total.  (Id. ¶¶ 47-48.)  According to Plaintiffs, "Sheriff Neil Warren either knew of these complaints or should have known of these complaints."  (Id. ¶ 49.)

Around December 2012 or January 2013, Sutherland sexually assaulted his next victim, Plaintiff Brooks, after he cornered her alone in a supply closet. (Id. ¶ 51.)  Sutherland then assaulted another inmate, Plaintiff Kendall, in January 2013 when he was supposed to take her back to her cell but instead

4

took her to a secluded part of the jail and raped her.  (Id. ¶ 41.)  After the attack,

Sutherland took Kendall back to her cell and made her change her clothing and

give him the clothes she had been wearing.  (Id. ¶ 42.)  However, Kendall

retained her pants to preserve DNA evidence from semen stains.  (Id.)  At some

point, Kendall reported the rape.  Plaintiffs allege that Kendall "was threatened

with charges if she kept complaining before the DNA evidence she provided

came back positive as belonging to Sergeant Sutherland."  (Id. ¶ 43.)  Finally, in

March 2013 both Travitz and Sutherland were indicted by a Cobb County grand

jury on numerous counts of aggravated sodomy, aggravated sexual battery,

sexual assault, and sexual assault against a person in custody.  (Id. ¶¶ 25-26.)

Both pled guilty in November 2013.  Sutherland was sentenced accordingly to

40 years with 20 to serve, and Travitz was sentenced to 15 years with 5 to serve.

(Id.)

On December 26, 2013, Plaintiffs filed this action.  In addition to

asserting claims against Travitz and Sutherland, Plaintiffs allege that Cobb

County and Sheriff Warren are liable for Travitz and Sutherland's actions

because Sheriff Warren had a policy permitting male deputies to transport

female prisoners around the jail unsupervised despite numerous complaints that

5

had been filed against both deputies, and otherwise failed to take any action to stop the abuse.  (Id. ¶ 28.)  Moreover, Plaintiffs state that some deputy sheriffs sexually harassed other CCADC employees, and "CCADC was a highly sexualized facility with rampant abuses of the female inmates and female guards."  (Id. ¶ 35.)

Based on the above allegations, Plaintiffs allege that Defendants violated their Eighth and Fourteenth Amendment rights by imposing cruel and unusual punishments.[2]  In particular, Sheriff Warren failed to train and supervise deputies at the CCADC regarding sexual assaults.  Additionally, Cobb County's ten-percent budget cuts resulted in understaffing of the jail, leading to an unsafe environment and more sexual assaults.  (See id. ¶ 24.)  Cobb County and Sheriff

---

[2] "The Eighth Amendment applies to convicted inmates.  A pretrial detainee's 'constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment.' " Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995)).  " '[T]he standard[, however,] for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.' " Id. (quoting Marsh v. Butler County, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc)).  Some Plaintiffs here were pretrial detainees while others were convicted inmates.  Because the applicable standards are the same for all Plaintiffs, for simplicity's sake the Court refers only to the Eighth Amendment in evaluating Plaintiffs' claims.

Warren move for dismissal of all claims, and Plaintiffs move to file a Second

Amended Complaint.

## Discussion

## I.      Motion for Reconsideration

As a preliminary matter, the Court addresses Defendant WellStar Health

Network's Motion for Reconsideration [47] of the Court's October 8, 2014

Order [45] granting Plaintiffs' motion to voluntarily dismiss WellStar without

prejudice.  Under the Local Rules of this Court, "[m]otions for reconsideration

shall not be filed as a matter of routine practice[,]" but rather, only when

"absolutely necessary."  LR 7.2(E), NDGa.  Such absolute necessity arises

where there is "(1) newly discovered evidence; (2) an intervening development

or change in controlling law; or (3) a need to correct a clear error of law or

fact."  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).

However, a motion for reconsideration may not be used "to present the court

with arguments already heard and dismissed or to repackage familiar arguments

to test whether the court will change its mind."  Id. at 1259.  Furthermore, "[a]

motion for reconsideration is not an opportunity for the moving party . . . to

instruct the court on how the court 'could have done it better' the first time."

7

<u>Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs</u>, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), <u>aff'd</u>, 87 F.3d 1242 (11th Cir. 1996).

In its October 8 Order [45], the Court treated Plaintiffs' Motion to Dismiss [40] as unopposed and denied WellStar's motion to dismiss as moot. WellStar argues that the Court should not have granted Plaintiffs' motion because WellStar in fact opposed that motion and asked the Court to deny Plaintiffs' motion and grant WellStar's Motion to Dismiss [20] instead.

WellStar indeed responded to Plaintiffs' motion.  While the Court inaccurately characterized the motion as unopposed, in the Court's view granting either Plaintiffs' motion or WellStar's motion would result in a dismissal without prejudice.  In WellStar's motion to dismiss, WellStar argued that Plaintiffs named WellStar Health Network, Inc., a nonexistent WellStar entity, as Defendant.[3]  Moreover, WellStar argued that Plaintiffs' purported service of process on the nonexistent entity was insufficient, and thus the Court lacked personal jurisdiction over the nonexistent entity.  (<u>See</u> WellStar's Mot.

---

[3]James M. Swartz, a vice president of WellStar Health System, Inc., provided an affidavit explaining that WellStar Health Network, Inc., the party named in this suit, is not affiliated with his company and apparently does not exist. (Swartz Aff., Dkt. [20-2] ¶ 5.)

8

to Dismiss, Dkt. [20-1] at 3.)  "Dismissal for lack of personal jurisdiction is without prejudice . . . ."  <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 496 (11th Cir. 1988); <u>see also</u> FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . .").  Had the Court instead first granted WellStar's motion, dismissed the nonexistent WellStar entity without prejudice, and then denied Plaintiffs' motion to dismiss as moot, then the result would have been the same.  The Court therefore finds no clear error of fact or law in its earlier Order [45], and WellStar's Motion for Reconsideration [47] is accordingly **DENIED**.

## II.    Legal Standards

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In

9

order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  See Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

B.      Motion to Amend

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or

10

(f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court has "extensive discretion" in deciding whether to grant leave to amend.  <u>Campbell v. Emory Clinic</u>, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile."  <u>Id.</u>  A claim is futile if it cannot withstand a motion to dismiss.  <u>Fla. Power & Light Co. v. Allis Chalmers Corp.</u>, 85 F.3d 1514, 1520 (11th Cir.1996); <u>see</u> <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying "inadequacy as a matter of law").  That is, leave to amend will be denied  "if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim."  <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1255 (11th Cir. 2008).

## III.   Cobb County's Motion to Dismiss

### A.   <u>Federal Claims</u>

11

Plaintiffs assert that Cobb County is responsible for Plaintiffs'

constitutional violations because Sheriff Warren promulgated policies that let

sexual assaults occur and failed to take action to prevent these assaults; Cobb

County failed to maintain and adequately fund the jail; and Cobb County did

not provide adequate staffing and supervision over inmates or staff at the

CCADC.   Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must

make a prima facie showing of two elements: (1) that the act or omission

deprived plaintiff of a right, privilege or immunity secured by the Constitution

or laws of the United States, and (2) that the act or omission was done by a

person acting under color of law.' " Marshall Cnty. Bd. of Educ. v. Marshall

Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th  Cir. 1993) (quoting Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th  Cir. 1990)).  Local

12

government units such as counties constitute "persons" subject to suit under §

1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  At the same

time, however, the Supreme Court "has placed strict limitations on municipal

liability under § 1983."  Grech v. Clayton County, 335 F.3d 1326, 1329 (11th

Cir. 2003).

In this case, Plaintiffs seek to hold Cobb County liable for the

unconstitutional acts and omissions of Sheriff Warren and his deputies.  In

Monell, the Supreme Court held that "a municipality cannot be held liable

under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  On the

contrary, the Court held that local governing bodies, such as counties, can be

sued under § 1983 only where "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers."  Id. at 690.  In

other words, to hold a county liable under § 1983, a plaintiff must show that a

county employee or policymaker committed the constitutional violation, and did

so pursuant to an official county policy or custom.  Id. at 694.

    1.    *Allegations in the First Amended Complaint*

13

Plaintiffs first assert that Cobb County is liable for Sheriff Warren's actions.  Cobb County argues, on the other hand, that it cannot be held liable for Sheriff Warren's actions because he was acting as an arm of the State of Georgia in running the jail and so was not acting pursuant to any official *county* policy.  If that is the case, then Cobb County cannot be liable under § 1983.  In Manders v. Lee, the Eleventh Circuit noted that whether a sheriff acts on behalf of the state or county is a question that cannot be answered absolutely, but one that, rather, "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  338 F.3d 1304, 1308 (11th Cir. 2003).  Under this framework, the Manders court held that in Georgia sheriffs act on behalf of the state, not the county, "in establishing use-of-force policy at the jail and in training and disciplining [their] deputies in that regard."  Id. at 1305.  The court concluded that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [Cobb] County."  Id. at 1315.  See also Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1325 (11th Cir. 2005) ("[A sheriff] functions as an arm of the State—not Toombs County—when promulgating policies and procedures governing conditions of confinement of

14

the Toombs County Jail."); <u>Scruggs v. Lee</u>, 256 F. App'x 229, 231-32 (11th Cir. 2007) ("[W]e conclude that [the Sheriff] . . . is an "arm of the State" . . . in executing the function of establishing policies at the jail for processing arrestees.").

Plaintiffs allege that Sheriff Warren's policies and deliberate indifference to complaints made by inmates about sexual assault violated Plaintiffs' Eighth Amendment rights.  As the Eleventh Circuit illustrated in the cases above, however, Sheriff Warren promulgates jail policies pursuant to his authority as an arm of the State of Georgia, not as a policymaker of Cobb County.  Even if Sheriff Warren violated Plaintiffs' constitutional rights, § 1983 does not grant Plaintiffs a cause of action against Cobb County for Sheriff Warren's actions in administering the jail.  Therefore, Cobb County is not liable on this basis.

Second, Plaintiffs allege that Cobb County did not adequately fund the jail, pointing to the County's duty to properly maintain, operate, and fund the CCADC.  According to <u>Manders</u>, "[Cobb] County must (1) maintain the jail structure, (2) appropriate funds for necessities to inmates (such as food, bedding, clothing, electricity, and sanitation) and the salaries of [the Sheriff] and his deputies, and (3) pay the premium for the Sheriff's official bond."  338

15

F.3d at 1323.  As for the duty to maintain the jail, Cobb County argues that its

statutory duty extends only to the jail's structure.  Indeed, under O.C.G.A. § 36-

9-5(a), the County's duty is "to erect or repair, when necessary, their respective

courthouses and jails and all other necessary county buildings."  This duty is

not at issue here.  Next, Plaintiffs do not allege that Cobb County failed to

appropriate funds for necessities like food or sanitation.  In any event, it is the

duty of prison officials to "ensure that inmates receive adequate food, clothing,

shelter, and medical care."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Further, Plaintiffs do not allege that Cobb County failed to pay the premium for

the sheriff's official bond.  Accordingly, Plaintiffs fail to allege a basis for Cobb

County's liability in their First Amended Complaint.

> 2.    *Allegations in the Proposed Second Amended Complaint*

Nevertheless, Plaintiffs add a third basis for Cobb County's liability in

their proposed Second Amended Complaint: Cobb County failed to adequately

staff and supervise the CCADC.  Facing a 2011 budget shortfall of $32 million,

Cobb County reduced departmental operating budgets by ten percent, which led

to understaffing at the CCADC.  (See Second Am. Compl., Dkt. [26] ¶ 24.)

Plaintiffs allege that this decision in turn created an unsafe environment for

16

inmates and put them "at risk for sexual abuse by the jailers after complaints of sexual misconduct had already been made." (Id.) Cobb County argues that amending the complaint would be futile because (1) the budget decision is not a custom, policy, or practice of Cobb County, and (2) Plaintiffs fail to allege facts showing that inadequate funding caused Plaintiffs' injuries. Plaintiffs do not respond to Cobb County's arguments opposing Plaintiffs' amendment to their complaint; therefore, Cobb County's arguments are deemed unopposed. See LR 7.1(B), ND Ga.

Cobb County argues that its single budget decision does not evidence a policy of understaffing the CCADC. But, assuming it did, Plaintiffs must also satisfy the causation requirement for municipal liability. The causation element requires a showing that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Id. at 415 (emphasis in original). "To meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or

17

obvious consequences.' " <u>McDowell v. Brown</u>, 392 F.3d 1283, 1291 (11th Cir.

2004) (quoting <u>Brown</u>, 520 U.S. at 407).  A showing of mere negligence is not

enough to establish municipal liability.  <u>Id.</u>

In <u>McDowell v. Brown</u>, the plaintiff alleged that DeKalb County's

custom of understaffing the jail caused a delay in the plaintiff's transportation

to a hospital for treatment of a spinal cord compression condition.  <u>Id.</u> at 1286-

87.  The delay rendered the plaintiff incapable of walking without assistance.

<u>Id.</u>  The plaintiff argued that the county was liable for an Eighth Amendment

violation because it failed to properly fund the jail, and so the jail could not

maintain an adequate number of staff.  <u>Id.</u> at 1289.  But the Eleventh Circuit

found that the plaintiff could not show the county knew that understaffing

would cause delays in medical transports because there were no previous delays

due to understaffing.  <u>See id.</u> at 1291.  Thus, the court found that the county

"had no notice of the consequences 'based on previous violations of federally

protected rights.' "  <u>Id.</u> (quoting <u>Brown</u>, 520 U.S. at 408).

The court next observed that even if a county's budget decision would

make the violation of constitutional rights " 'more *likely*,' that alone cannot

'give rise to an inference that a policy maker's failure to scrutinize the [budget]

18

. . . produced a specific constitutional [violation]." Id. at 1292 (quoting Brown,

520 U.S. at 411). Rather, "liability must be premised on a finding that '*this*'

budget decision was 'highly likely to inflict the *particular* injury' [the plaintiff]

suffered." Id. In other words, a plaintiff's injuries must be a "plainly obvious

consequence" of a county's policy decision. Id. In McDowell, the court further

held that the plaintiff produced no evidence that jail officials were unable to

perform medical transports because of a lack of resources. See id. at 1292-93.

Moreover, the jail had a policy to call an ambulance if it was unable to perform

the transport itself. Id. Thus, the plaintiff's injury was not a plainly obvious

consequence of the county's actions, and the court found "no indication that

DeKalb County deliberately invoked a policy to interfere with the Jail's

provision of medical care to inmates or to deny inmate access to medical care."

Id. at 1294.

　　　Here, as McDowell illustrates, Cobb County can only be liable if it knew

that cutting the budget in 2011 would likely result in sexual assaults. However,

there are no allegations that Cobb County knew of any sexual assault

complaints before its budget decision. Furthermore, the assaults in 2010

occurred before the alleged understaffing, so these assaults could not have put

the county on notice that cutting the budget would put inmates at risk of sexual abuse.  Without any allegations that Cobb County itself was on notice of sexual assaults, the Court cannot conclude that Cobb County deliberately cut the budget knowing that understaffing was highly likely to lead to sexual abuse by guards.  Instead, the fact that the county faced a budget shortfall indicates that the county acted not deliberately to cause inadequate staffing and abuse at the jail but to close a budget gap.  Consequently, Plaintiffs fail to allege facts in their proposed Second Amended Complaint demonstrating that Cobb County acted with deliberate indifference in its budget decision and that the decision was the moving force behind Plaintiffs' injuries.  Therefore, amending the complaint to add these allegations would be futile.

>    B.    State-Law Claims

Plaintiffs also name Cobb County in most of their counts under state law. The Georgia Constitution, however, extends sovereign immunity to all levels of government, including counties.  Gilbert v. Richardson, 452 S.E.2d 476, 479 (Ga. 1994).   Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver."  GA. CONST. art. I, § 2, ¶ 9(e).  Plaintiffs

do not allege in either their First or Second Amended Complaints that Georgia has waived its sovereign immunity for the purposes of this suit.  As a result, Cobb County is immune from Plaintiffs' state-law claims.  Plaintiffs' Motion to Amend [27] is thus **DENIED** as to Cobb County, and Cobb County's Motion to Dismiss [18] is **GRANTED**.

## IV.    Sheriff Warren's Motion to Dismiss

Sheriff Warren moves to dismiss both the federal and state-law claims against him in his official and individual capacities.  Plaintiffs' allegations against Sheriff Warren in their First and Second Amended Complaints are substantially similar, so the Court refers to both complaints in evaluating the motion to amend and the motion to dismiss.

### A.    Federal Claims

#### 1.    *Official-Capacity Claims*

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  <u>Monell</u>, 436 U.S. at 690 n.55.  Thus, suits against government officials in their official capacities should be treated as suits against the government.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 n.11 (1985).  States and their officials are immune from suit

under § 1983 pursuant to the Eleventh Amendment, which, absent

congressional abrogation,[4] "protects a State from being sued in federal court

without the State's consent." Manders, 338 F.3d at 1308; see also Will v. Mich.

Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "neither a State nor

its officials acting in their official capacities are 'persons' under § 1983"). This

Eleventh Amendment immunity from suit in federal court applies not only in

suits against a state itself, but also in suits against an "arm of the state." Id.

In this case, Sheriff Warren contends that he is an "arm of the state" and

is thus entitled to Eleventh Amendment immunity from Plaintiffs' federal-law

claims. The Court agrees. As explained above, Sheriff Warren acts pursuant to

his authority granted by the State of Georgia, not Cobb County, when he

establishes rules and policies for the jail. Furthermore, Plaintiffs do not

challenge Sheriff Warren's entitlement to Eleventh Amendment immunity in

his official capacity. Accordingly, the federal claims against Sheriff Warren in

his official capacity are due to be dismissed.

2.     *Individual-Capacity Claims*

-------

[4] Congress did not abrogate Eleventh Amendment immunity for claims brought
pursuant to § 1983. Quern v. Jordan , 440 U.S. 332, 338 (1979).

Plaintiffs next allege that Sheriff Warren is liable in his individual capacity for Plaintiff's injuries because "he instituted policies and customs that were deliberately indifferent to the Plaintiffs' constitutional rights." (Pls.' Resp., Dkt. [23] at 3.) In particular, Plaintiffs argue Sheriff Warren violated their Eighth Amendment rights because his policies for training, supervising, and monitoring his deputies put inmates at substantial risk of serious harm. (Id.) Additionally, Plaintiffs allege that Sheriff Warren did nothing to protect inmates even though he knew of the guards' misconduct. (Second Am. Compl., Dkt. [26] ¶ 71.) For his part, Sheriff Warren contends that he did not violate Plaintiffs' constitutional rights, and even if he did, he is protected by the doctrine of qualified immunity.

### a.    Qualified Immunity and the Eighth Amendment

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a

23

government official first must prove that he was acting within his discretionary authority." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Id. at 1358. As a threshold issue, the Court finds that Sheriff Warren has shown that he acted within his discretionary authority in managing the jail and supervising deputies.

Next, whether an official is entitled to qualified immunity is determined by a two-step inquiry: One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' " Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).

24

AO 72A
(Rev.8/82)

To establish supervisory liability for a constitutional violation against a defendant like Sheriff Warren, a plaintiff must allege that the supervisor "personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Key v. Lundy, 563 F. App'x 758, 760 (11th Cir. 2014) (quoting Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013)).

As the Eleventh Circuit explained in Cottone v. Jenne,

The necessary causal connection can be established when [1] a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established [2] when a supervisor's custom or policy results in deliberate indifference to constitutional rights or [3] when facts support an inference that the supervisor directed the subordinates to act unlawfully or [4] knew that the subordinates would act unlawfully and failed to stop them from doing so.

326 F.3d at 1360 (citations and internal quotation marks omitted). The court further noted, "The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Id. (citation omitted). Here, Plaintiffs do not allege that Sheriff Warren personally participated in sexual abuse, nor do they allege that he directed subordinates to act unlawfully. As a result, Plaintiffs must show either that (1) Sheriff Warren

25

AO 72A
(Rev.8/82)

knew of a history of widespread abuse but did nothing; (2) he enacted a custom or policy knowing it would result in sexual assault; or (3) he knew Travitz or Sutherland would act unlawfully and failed to stop them.

### b.    Analysis

The Court first notes that Plaintiffs Mitchell and Daley's claims against Sheriff Warren based on actions of Sergeant Travitz are barred by Georgia's statute of limitations for personal injury actions.  Travitz assaulted them between approximately November 17, 2010, and January 2, 2011.  (See Second Am. Compl., Dkt. [26] ¶ 52.)  "Federal courts apply their forum state's statute of limitations for personal injury actions brought pursuant to 42 U.S.C. § 1983." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998)) (internal quotation marks omitted). Federal law, by contrast, determines when the statute of limitations begins to run in § 1983 cases: "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Id. (quoting Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996)) (internal quotation marks omitted).  Georgia's statute of limitations for personal injury actions is two

26

years from the date "the right of action accrues."  O.C.G.A. § 9-3-33.  Thus, the

statute of limitations for Plaintiffs Mitchell and Daley's claims expired on

January 2, 2013.

Plaintiffs contend, though, that the statute of limitations was tolled due to

the criminal prosecution against Travitz.  "[S]tate law generally determines

tolling rules" in § 1983 cases.  <u>Salas v. Pierce</u>, 297 F. App'x 874, 877 (11th Cir.

2008) (citing <u>Wallace v. Kato</u>, 549 U.S. 384, 393-96 (2007)).  Under Georgia

law,

> The running of the period of limitations with respect to any cause
> of action in tort that may be brought by the victim of an alleged
> crime which arises out of the facts and circumstances relating to
> the commission of such alleged crime committed in this state shall
> be tolled from the date of the commission of the alleged crime . . .
> until the prosecution of such crime or act has become final or
> otherwise terminated, provided that such time does not exceed six
> years.

O.C.G.A. § 9-3-99.

The Georgia Court of Appeals has held that this provision "tolls the

statute of limitation for any cause of action in tort brought by the victim of an

alleged crime while the prosecution of the *defendant* is pending, for a period not

to exceed six years."  <u>Mays v. Target Corp.</u>, 743 S.E.2d 603, 46 (Ga. Ct. App.

27

2013) (quoting <u>Valades v. Uslu</u>, 689 S.E.2d 338, 342 (Ga. Ct. App. 2009))
(internal quotation marks omitted).  Courts thus hold that if a civil defendant in
a tort action is not prosecuted for the crime giving rise to a cause of action,
related criminal proceedings do not toll the statute of limitations for that civil
defendant.  <u>See</u> <u>id.</u> (holding that a tort claim against Target arising out of a
Target employee's invasion of plaintiff's privacy, for which the employee was
criminally charged and later pled guilty, was barred by the two-year limitations
period because Target was not prosecuted).  Here, because Sheriff Warren was
not prosecuted, the two-year statute of limitations for Plaintiffs' claims against
him was not tolled.  Because the statute of limitations ran on January 2, 2013,
and Plaintiffs filed this action on December 26, 2013, Plaintiffs' claims against
Sheriff Warren based on Travitz's actions are barred.  Accordingly, Sheriff
Warren's Motion to Dismiss [19] is **GRANTED** with respect to his liability for
Travitz's conduct.

     The Court turns to Plaintiffs McLaughlin, Kendall, and Brooks's claims
against Sheriff Warren regarding Sergeant Sutherland.  To show a violation of
an inmate's rights under the Eighth Amendment, "Plaintiff  must 'produce
sufficient evidence of (1) a substantial risk of serious harm; (2) the

defendant['s] deliberate indifference to that risk; and (3) causation.' " Purcell,

400 F.3d at 1319 (quoting Hale, 50 F.3d at 1582).  "To be deliberately

indifferent a prison official must know of and disregard 'an excessive risk to

inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference.' " Id. at 1319-20 (quoting Farmer, 511 U.S. at

837).  In other words, deliberate indifference requires "(1) *subjective*

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct

that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325,

1331-32 (11th Cir. 2013) (emphasis added).  "Whether a prison official had the

requisite knowledge of a substantial risk is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial

evidence, and a factfinder may conclude that a prison official knew of a

substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S.

at 842.

 Because the first element of deliberate indifference requires the Court to

examine Sheriff Warren's subjective knowledge of a risk of serious harm, the

Court must focus on what Sheriff Warren actually knew at the time each

AO 72A
(Rev.8/82)

Plaintiff was assaulted.  Again, Plaintiffs may establish this knowledge by showing that Sheriff Warren enacted a custom or policy knowing it would likely result in sexual abuse; that he knew of a widespread history of sexual abuse but failed to take corrective measures; or that he knew his deputies would engage in sexual abuse but he failed to stop them.

<em>i.      Custom or policy</em>

In addition to the facts alleged in the Background, *supra*, Plaintiffs assert that Sheriff Warren knew about Travitz and Sutherland's sexual misconduct "and did nothing to implement more stringent policies" to detect and deter sexual abuse and to protect inmates.  (First Am. Compl., Dkt. [11] ¶ 89; <u>see generally</u> <u>id.</u> ¶¶ 93-115.)  Plaintiffs assert that Sheriff Warren allowed his deputies to transport female inmates around the jail unsupervised and failed to change this policy after Jackson filed her complaints, while other deputies "voic[ed] concern about the inappropriate conduct of Sergeant Sutherland."  (<u>Id.</u> ¶ 23.)  And in their proposed Second Amended Complaint, Plaintiffs allege that "most jailers were provided with no formal training concerning proper contact with inmates."  (Second Am. Compl., Dkt. [26] ¶ 72.)

30

Still, Plaintiffs do not adequately allege why Sheriff Warren would have known that any particular policies were causing deputies to abuse inmates. While Plaintiffs allege that Sheriff Warren failed to enact training policies to protect Plaintiffs, they fail to describe "the sort of policies that should have been in place, or how those policies could have prevented [Sutherland's] harassment." Franklin, 738 F.3d at 1251 (rejecting a plaintiff's conclusory allegations about an unconstitutional policy). The Court therefore finds that Plaintiffs fail to allege that Sheriff Warren promulgated a custom or policy resulting in deliberate indifference to Plaintiffs' rights.

### ii.    *Widespread abuse*

Plaintiffs can also show that Sheriff Warren's lack of action caused their injuries if Sheriff Warren knew of a history of widespread abuse but failed to take steps to correct it. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted).

Plaintiffs allege that Sheriff Warren "knew or should have known" about widespread abuse and the risks Plaintiffs faced. The Eleventh Circuit has held

31

that this type of conclusory allegation by itself is insufficient to establish subjective knowledge.  In <u>Franklin v. Curry</u>, the plaintiff alleged that a jail guard sexually assaulted her as she was booked into the jail, and he again assaulted her in her cell at night.  738 F.3d at 1248.  The plaintiff sued the guard and several supervisory defendants under § 1983, alleging only that the supervisory defendants "knew or should have known" of the officer's conduct and yet failed to adopt policies to protect female inmates.  <u>Id.</u> at 1250.  The court held that by alleging knowledge in this way, the plaintiff "ha[d] merely recited an element of a claim without providing the facts from which one could draw such a conclusion."  <u>Id.</u> at 1251.  Moreover, "she d[id] not describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented [the officer's] harassment."  <u>Id.</u>

Taking Plaintiffs' allegations as true, the first time Sheriff Warren became aware of any sexual abuse was when several inmates filed complaints against Travitz on November 5, 2010.  (<u>See id.</u> ¶ 21.)  So, unlike the plaintiff in <u>Franklin</u>, Plaintiffs here allege that Sheriff Warren actually knew "Travitz had acted inappropriately with inmates prior to the acts alleged [in this case]," and

32

Plaintiffs provide a factual basis for this knowledge by alleging that inmates filed numerous complaints against Travitz.  (Id.)  By contrast, Plaintiffs do not allege that Sheriff Warren knew about Travitz's abuse of Mitchell and Daley in late 2010.  They allege that several deputies "confronted both Sergeant Travitz and Plaintiff Stacey Mitchell about their inappropriate relationship and demanded they explain why the Plaintiff was being provided with passes at irregular hours to leave the CCADC," (id. ¶ 54) while on the other hand "Sergeant Travitz's behavior was not corrected, monitored, or investigated," (id. ¶ 55.)  There are no facts pertaining to Mitchell and Daley showing that the deputies ever alerted Sheriff Warren to their concerns, or that anyone filed formal complaints.  Nor do Plaintiffs even allege in a conclusory fashion that Sheriff Warren knew about Travitz's abuse of Mitchell and Daley.

The first incident involving Sutherland then occurred over a year later, in April 2012, when Sutherland began assaulting Plaintiff McLaughlin.  (Id. ¶ 44.) At that point, Sheriff Warren only knew about Travitz's actions, which were reported in November 2010, but this limited knowledge is not sufficient to show

abuse so widespread that other deputies were likely to commit sexual abuse.[5]

And, while Plaintiffs allege that there was "a history of complaints involving

sexual relationships between jailers and inmates," (Second Am. Compl., Dkt.

[26] ¶ 72) Plaintiffs do not provide enough factual allegations from which the

Court could conclude that this was so.[6]  Therefore, Sheriff Warren could not

have known, based solely on Travitz's misconduct, that there was widespread

abuse at the CCADC.

> ### iii.      Knowledge Sutherland would act unlawfully

The Court next focuses on whether Sheriff Warren knew Sutherland

would act unlawfully and failed to stop him.  According to Plaintiffs, the first

time Sheriff Warren found out about Sutherland's abuse of McLaughlin was in

August or September 2012, when another inmate, Jackson,  reported it to

---

[5]Plaintiffs allege that another inmate, who is not a party to this action, verbally complained to deputies about Sutherland's conduct in January or February 2012 (before the assaults on McLaughlin).  (See Second Am. Compl., Dkt. [26] ¶ 22.) However, Plaintiffs do not allege that Sheriff Warren knew about these complaints; instead they allege only that "Defendants failed to take any actions or investigate pursuant to this complaint."  (Id.)  This allegation therefore cannot show that Sheriff Warren was aware of widespread abuse back in January or February 2012.

[6]Of the few specific examples of sexual misconduct by officers that Plaintiffs cite, one isolated incident occurred "a few years ago," and the other two occurred after the events of this case.  (First Am. Compl., Dkt. [11] ¶¶ 42-44.)  These examples fail to show a history of widespread abuse.

several deputies and then filed formal complaints.  (See id. ¶¶ 45-47.)  Sheriff

Warren argues that Plaintiffs do not allege that the deputies told him about

Jackson's allegations or that he received a copy of Jackson's complaints.  (See

Warren's Mot. to Dismiss Br., Dkt. [19] at 14.)  Rather, Plaintiffs simply allege

that Sheriff Warren "knew or should have known" of the abuse.  But unlike the

plaintiff in Franklin, Plaintiffs here allege facts beyond conclusory statements.

By alleging that Jackson reported abuse to deputies and filed formal complaints,

the Court finds—construing all reasonable inferences in favor of

Plaintiffs—that Sheriff Warren knew about the abuse because it was reported

through a formal grievance process.  While Plaintiffs use "knew or should have

known" language like in Franklin, at the motion-to-dismiss stage Plaintiffs'

factual allegations about Jackson's formal reports provide a plausible basis to

infer Sheriff Warren's subjective knowledge of Sutherland's actions.

   At this point—September 2012—Sheriff Warren knew that Sutherland

posed a serious risk to McLaughlin and others.  Sutherland then continued to

abuse McLaughlin until January 2013.  Apparently, "[n]o action was taken to

avoid further contact between Sergeant Sutherland and Plaintiff Kimberly

McLaughlin after [Jackson's complaints]."  (Second Am. Compl., Dkt. [26] ¶

45.)  Further, after Sheriff Warren became aware of this risk, Sutherland

victimized Plaintiff Brooks in December 2012 or January 2013 and then raped

Plaintiff Kendall in January 2013.  In view of the facts in the Second Amended

Complaint, Plaintiffs plausibly allege that Sheriff Warren knew Sutherland was

going to act unlawfully but failed to stop him.  Consequently, the Court finds

that Plaintiffs have stated a claim against Sheriff Warren for deliberate

indifference.

### iv.      Qualified Immunity Analysis

Although Plaintiffs have stated a claim for a constitutional violation, they

must still show that the constitutional right was clearly established at the time of

their injury.  A constitutional right is clearly established "only if its contours are

'sufficiently clear that a reasonable official would understand what he is doing

violates that right.' "  Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003)

(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While the fact

patterns of prior cases used to show that a right is clearly established need not

be "fundamentally similar" or even "materially similar," the salient question is

whether the law at the time of the alleged violation gave officials "fair warning"

36

that their acts were unconstitutional.  Holmes v. Kucynda, 321 F.3d 1069, 1078

(11th Cir. 2003) (quoting Hope, 536 U.S. at 740).

A plaintiff can demonstrate that the contours of the right were clearly

established in several ways.  First, a plaintiff may show that "a materially

similar case has already been decided."  Mercado v. City of Orlando, 407 F.3d

1152, 1159 (11th Cir. 2005) (citing Harlow, 457 U.S. at 818).  Second, a

plaintiff can point to "a broader, clearly established principle [that] should

control the novel facts [of the] situation."  Id. (citing Hope, 536 U.S. at 741).

Finally, the conduct involved in the case may "so obviously violate[ ] th[e]

constitution that prior case law is unnecessary."  Id. (citing Lee v. Ferraro, 284

F.3d 1188, 1199 (11th Cir. 2002)).  Under controlling law, a plaintiff must carry

his burden by looking to the law as interpreted at the time by the U.S. Supreme

Court, the Eleventh Circuit, or the Georgia Supreme Court.  See id.

Sheriff Warren argues that he is entitled to qualified immunity because

Plaintiffs have not produced case law showing that a policy permitting male

deputies to escort female inmates around the jail without supervision violates

clearly established law.  While that may be true, there are more facts to this

case.  As explained above, Plaintiffs state a claim not based on inadequate

37

policies but on Sheriff Warren's knowledge that Sutherland would engage in illegal conduct and Sheriff Warren's failure to stop it.

In that regard, the Eighth Amendment protects prisoners from "the unnecessary and wanton infliction of pain." Farmer, 511 U.S. at 835. The Eleventh Circuit has recognized that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Id. (quoting Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)). The right to be free from sexual abuse was thus clearly established at the time of Sutherland and Warren's actions. And, in light of the principles of supervisory liability discussed above, it follows that it was also clearly established that deliberate indifference to a known risk of sexual abuse by a prison guard was unconstitutional. Cf. Farmer, 511 U.S. at 850 (holding that prison officials could be liable for deliberate indifference toward transsexual inmate who was transferred to a maximum security facility where he was raped and assaulted by prisoners because there was evidence that the officials knew

38

the risks the inmate faced); Mathews v. Crosby, 480 F.3d 1265, 1275 (11th Cir.

2007) (explaining that it was clearly established that a supervisor could face

liability for "fail[ing] to take reasonable steps in the face of a history of

widespread abuse").  Consequently, Sheriff Warren's Motion to Dismiss [19] is

**DENIED** and Plaintiffs' Motion to Amend [27] is **GRANTED** as to this claim.

> B.    State-Law Claims

The Court's final inquiry examines the state-law claims against Sheriff

Warren in his official and individual capacities.

> 1.    *Official-Capacity Claims*

Because suits against state officials in their official capacities are in

reality suits against the state, Brandon v. Holt, 469 U.S. 464, 471 (1985), a state

official sued in his or her official capacity "is entitled to the [state]'s defense of

sovereign immunity."  Nichols v. Prather, 650 S.E.2d 380, 385 (Ga. Ct. App.

2007).  Again, Sheriff Warren's official-capacity claims under state law are in

reality claims against the State of Georgia.  Because Plaintiffs do not cite any

legislative waiver of Georgia's sovereign immunity for the purposes of this suit,

Plaintiffs' official-capacity claims against Sheriff Warren are likewise

**DISMISSED**.

### 2.    *Individual-Capacity Claims*

The state constitutional provision governing official immunity provides:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert, 452 S.E.2d at 483.  Accordingly, under this definition, the constitutional provision "provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id.  "It, however, does provide immunity for the negligent performance of discretionary acts . . . ." Id.  In sum, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts

40

negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).

As a threshold matter, the Court finds that Sheriff Warren was performing discretionary acts in developing policies for the jail and supervising his deputies. Plaintiffs do not dispute this point. Next, the Court concludes that Plaintiffs have failed to show actual malice or intent to injure on the part of Sheriff Warren. For purposes of official immunity, " 'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006). Plaintiffs allege that Sheriff Warren knew or should have known that sexual assaults against Plaintiffs were taking place yet did nothing to protect the inmates. Still, Plaintiffs have not alleged any facts suggesting that Sheriff Warren acted with the deliberate intention to harm Plaintiffs. Even if he was deliberately indifferent or reckless in ignoring inmate complaints, Plaintiffs' First and Second Amended Complaints fail to establish malice. For that reason, Sheriff Warren is entitled to official immunity. Consequently, Plaintiffs'

41

Motion to Amend [27] is **DENIED**, and Sheriff Warren's Motion to Dismiss [19] is **GRANTED** as to Plaintiffs' state-law claims.

### Conclusion

For the foregoing reasons, Defendant Cobb County's Motion to Dismiss [18] is **GRANTED**, Defendant Sheriff Warren's Motion to Dismiss [19] is **GRANTED in part** and **DENIED in part**, Plaintiffs' Motion to Amend the Complaint [27] is **GRANTED in part** and **DENIED in part**, and Defendant WellStar's Motion for Reconsideration [47] is **DENIED**.

Cobb County is hereby **DISMISSED** from this action, and all claims against Sheriff Warren are **DISMISSED** except for Plaintiffs Kendall, McLaughlin, and Brooks's § 1983 deliberate indifference claim against him in his individual capacity.  Plaintiffs may proceed on their Second Amended Complaint [26] for the purposes of their deliberate indifference claim.

**SO ORDERED**, this   5th   day of November, 2014.


_____
**RICHARD W. STORY**
United States District Judge


42

AO 72A
(Rev.8/82)