## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JESSICA KENDALL, *et al.*,    :
    :
    Plaintiffs,    :
    :
    v.    :    CIVIL ACTION NO.
    :    1:13-CV-4263-RWS
ALVIN SUTHERLAND, *et al.*,    :
    :
    Defendants.    :
    :
    :
    :

## <u>ORDER</u>

This case comes before the Court on Plaintiffs' Motion for Leave to Amend the Second Amended Complaint [108], Motion to Compel Discovery [109], and Amended Motion to Compel Discovery [112], as well as Defendant Sheriff Warren's Motion for Summary Judgment [115]. After reviewing the record, the Court enters the following Order.

## Background[1]

---

[1] In their Response to Sheriff Warren's Statement of Material Facts [116-1], Plaintiffs dispute many of the facts that Sheriff Warren sets forth. In many instances, however, Plaintiffs' responses do not conform with the Court's Local Rules, which require "concise, nonargumentative responses." <u>See</u> LR 56.1(B)(2), NDGa. Many of Plaintiffs' responses span several pages and either fail to directly refute Sheriff Warren's facts or explain why his citations are not supportive of those facts. (<u>See e.g.</u>,

This civil rights action arises out of the sexual abuse of inmates by two guards at the Cobb County Adult Detention Center ("CCADC") from late 2010 until early 2013.  Plaintiffs Jessica Kendall, Kimberly McLaughlin, Alexzandrea Brooks, Stacey Mitchell, and Elizabeth Daley were either pretrial detainees or serving their sentences at the CCADC at the time the assaults occurred.  Plaintiffs sue Sheriff Neil Warren and the two perpetrators of the abuse, Sergeant Kristopher Travitz and Sergeant Alvin Sutherland, pursuant to 42 U.S.C. § 1983.  Both men were sheriff's deputies working at the jail.

A.    Sheriff Warren and the CCADC

Sheriff Warren has acted as the Sheriff of Cobb County since 2004 and is in charge of the entire operation of the Cobb County Sheriff's Office ("CCSO").  (Def.'s Statement of Material Facts, Dkt. [115-2] ¶ 13.)  At any given time, he and his command staff are responsible for 800 employees and more than 2,000 inmates.  (Id. ¶ 15.)

The CCSO is responsible for housing pretrial detainees and convicted

_____

Pls.' Resp. to Def.'s Statement of Material Facts ("Pls.' SMF"), Dkt. [116-1] at 9-14.)  Others do not contain any information at all, but merely state that Plaintiffs' response relies on statements made in other responses.  In these instances, the Court must deem Sheriff Warren's facts as admitted.  See LR 56.1(B)(2)(a)(2), N.D. Ga.

inmates at the CCADC.  (Id. ¶ 2.)  The majority of the CCADC staff are sworn law enforcement officers who are responsible for the day to day supervision and security in the facility.  (Id. ¶ 3.)  Sworn deputies must abide by a CCSO Code of Ethics and Code of Conduct, which require them to obey all federal, state, and local laws and to conduct themselves in a manner reflecting favorably on the CCSO.  (Id. ¶¶ 4-5.)  Prospective deputies are required to pass an intensive criminal history and background check and, once hired, must undergo training and attain certification by the Peace Officers Safety and Training Council ("POST").  (Id. ¶¶ 6-7.)  Deputies are trained to report vital information up the chain of command, which ultimately leads to the Sheriff himself.  (Id. ¶ 8.)  While Sheriff Warren does receive inmate grievances if they are made part of an internal affairs investigation, (Warren Dep., Dkt. [116-6] at 37-38), he does not receive, review, or process grievances as a matter of course. (Warren Decl., Dkt. [115-14] ¶ 12.)  Instead, he must rely on his staff to handle the day to day operations of all CCSO divisions.  (Def.'s SMF, Dkt. [115-2] ¶ 16.)

B.    Defendant Sutherland's Assaults

Defendant Sutherland was initially hired in 2002 by Sheriff Warren's

3

predecessor.  (Id. ¶ 45.)  Like all new hires, he underwent a criminal history

background check, psychological testing, and obtained the certifications and

training required by the CCSO.  (Id. ¶ 46.)  He was reprimanded once, in 2005,

for a leave related issue, but otherwise received good performance ratings and

was promoted to the supervisory position of Sergeant in 2009.  (Id. ¶ 48.)

Defendant Sutherland sexually assaulted Plaintiff McLaughlin between

April 2012 and January 2013.  (Id. ¶ 30).  But Plaintiff McLaughlin never filed

an internal complaint or grievance about Defendant Sutherland.  (Id. ¶ 31.)[2]  In

---

[2] This is one example of a fact that Plaintiffs claim to dispute, but that the
Court deems admitted because the response fails to comply with the Court's Local
Rules.  Plaintiffs' response to this fact—in its entirety—is as follows:

> Plaintiff's [sic] rebuttal to Paragraph 31 of Defendant
> Warren's Statement of Material Facts relies on the
> statements made in in [sic] rebuttal to Paragraphs 17, 19 &
> 26 of Defendant Warren's Statement of Material Facts.

(Pls.' SMF, Dkt. [116-1] at 28.)  Even if Plaintiffs' "rebuttals" to "Paragraphs 17, 19
& 26" addressed the fact at issue, this kind of response-by-reference is far afield of
what the Local Rules require.  See LR 56.1(B), NDGa.  Moreover, the referenced
"rebuttals" do not even relate to whether Ms. McLaughlin ever filed a grievance about
Defendant Sutherland.  In fact, Plaintiffs' response to Paragraph 26 is yet another
response-by-reference—it "relies on the statements made in in [sic] rebuttal to
Paragraphs 10, 19, 24 & 25 of Sheriff Warren's Statement of Material Facts."  (Pls.'
SMF, Dkt. [116-1] at 24.)  The burden does not fall on the Court to track down each
individual paragraph referenced by this and other similar responses to analyze whether
there is a fact issue.  Rather, the Local Rules place that burden on Plaintiffs.  Where
they have failed to meet that burden, the Court deems Sheriff Warren's facts admitted.

fact, when she was first questioned, Plaintiff McLaughlin denied that Defendant Sutherland had ever acted inappropriately with her.  (Id. ¶ 32.)  It was not until her second interview, on January 18, 2013—after Defendant Sutherland was terminated—that she informed CCSO officials that Defendant Sutherland engaged in sexual contact with her.  (Id. ¶ 34.)

Defendant Sutherland sexually assaulted Plaintiff Brooks on February 4, 2012.  (Id. ¶ 36.)  She claims that, on that date, Defendant Sutherland "rubbed his genitals on my buttocks."  (Id.)  From the time of this assault until her release from the CCADC on May 21, 2012, Plaintiff Brooks did not file any complaint or grievance about Defendant Sutherland.  (Id. ¶ 37.)  When she was first questioned about Defendant Sutherland on January 28, 2013, Plaintiff Brooks denied that he had made any improper sexual contact.  (Id. ¶ 39.)  It was not until April 19, 2013 that she informed CCSO officials of any sexual contact by Defendant Sutherland.  (Id. ¶ 40.)

Finally, Plaintiff Kendall reports that "on or about January 11, 2013 . . . [she] was raped by Sergeant Sutherland."  (Id. ¶ 42.)  On January 14, 2013, Plaintiff Kendall mailed a letter to her lawyer in which she informed him of the assault.  (Id. ¶ 44.)

5

C.      Discovery of Sexual Assaults at the CCADC

On January 16, 2013, Plaintiff Kendall's lawyer contacted Chief Deputy

Milton Beck and reported the rape.  (Id. ¶ 51.)  Chief Deputy Beck informed

command staff of the incident, including Sheriff Warren, and both criminal and

internal affairs investigations were immediately initiated.  (Id. ¶ 52.)

In a recorded interview on January 17, 2013, Plaintiff Kendall named

Defendant Sutherland as her assailant, but made no mention of any prior

attempts to inform CCSO officials of the rape.  (Id. ¶ 54.)  Defendant

Sutherland was separately interviewed that same day, after which he was

terminated from his employment and arrested.  (Id. ¶ 55.)

During the course of the internal affairs investigation, investigators

uncovered evidence that Defendant Sutherland also assaulted Plaintiff

McLaughlin and Plaintiff Brooks.  (Id. ¶ 57.)  As discussed above, Plaintiff

McLaughlin at first denied that Defendant Sutherland had engaged in

misconduct, but later admitted that he had sexual contact with her.  (Id. ¶¶ 57-

58.)  Likewise, Plaintiff Brooks did not allege that Defendant Sutherland had

sexual contact with her until April 19, 2013.  (Id. ¶ 61.)  Sheriff Warren claims

that he was not aware at any time prior to January 16, 2013 that Defendant

Sutherland was assaulting female inmates at the CCADC, nor had he received

any information that might lead him to believe that Defendant Sutherland was

engaged in such conduct or that he was a threat to inmate health or safety.  (Id.

¶ 20, 23.)

Soon after Sheriff Warren terminated Defendant Sutherland, an inmate

named Latrice Jackson told a deputy that she had alerted staff about Defendant

Sutherland's misconduct months previously and that they took no action.  (Id. ¶

65.)  In total, Ms. Jackson claims to have written one note and two formal

grievances detailing Defendant Sutherland's misconduct.  (See id. ¶¶ 66, 68.)

Based on information she provided, an investigation was opened to determine

if any staff at the CCADC violated policy in handling documents or

information that Ms. Jackson provided.  (Id. ¶ 67.)  As a result of this

investigation, two CCSO employees were reprimanded for failing to properly

process Ms. Jackson's grievances and not ensuring that the information was

communicated up the chain of command.  (Id. ¶ 72.)

The investigation of Defendant Sutherland led to a similar investigation

of Defendant Travitz, which began at the end of January, 2013.  (Id. ¶ 63.)

Following an interview, Defendant Travitz was also terminated and arrested for

sexually assaulting Plaintiffs Mitchell and Daley.[3]  (Id. ¶ 64.)

Plaintiffs filed this action on December 26, 2013.  (See Compl., Dkt. [1].)  They have already amended their complaint twice, filing the Second Amended Complaint on April 10, 2014.  While this case originally included additional claims and defendants, the only claims now remaining are against Defendants Travitz, Sutherland, and Sheriff Warren in his individual capacity.  The only claim against Sheriff Warren is a § 1983 claim for deliberate indifference.  (See Dkt. [51] at 42.)  Plaintiffs now move to amend their complaint for a third time and to compel discovery of certain documents that Sheriff Warren is allegedly withholding.  For his part, Sheriff Warren moves for summary judgment on the deliberate indifference claim.

## Discussion

## I.   Plaintiffs' Motion for Leave to Amend the Second Amended Complaint [108]

### A.   Legal Standard

_____

[3] The Court previously dismissed all claims against Sheriff Warren based on Defendant Travitz's conduct.  (Dkt. [51] at 28.)  Thus, Sheriff Warren did not include any facts about Defendant Travitz's specific conduct in his Statement of Material Facts [115-2].  Nor did Plaintiffs file a statement of additional facts to add them.  As such, the Court only briefly mentions Defendant Travitz here, but will fill in facts about him, as necessary, throughout this Order.

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f). Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend. Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires." Despite this instruction, however, leave to amend is "by no means automatic." Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).[4] The trial court has "extensive discretion" in deciding whether to grant leave to amend. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999). A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile." Id. A claim is futile if it cannot withstand a motion to dismiss. Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way

---

[4] In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9

of saying "inadequacy as a matter of law").  That is, leave to amend will be

denied  "if a proposed amendment fails to correct the deficiencies in the

original complaint or otherwise fails to state a claim."  Mizzaro v. Home Depot,

Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

B.    Analysis

Plaintiffs move to amend the Second Amended Complaint by adding

nine new Defendants.[5]  (See Proposed Third Am. Compl., Dkt. [108-1].)

Sheriff Warren opposes this proposed amendment, arguing that it is futile,

unduly prejudicial, and that Plaintiffs unduly delayed in filing it.[6]  (See Def.'s

Br. in Opp'n to Pls.' Mot. for Leave to Amend ("Def.'s MTA Resp."), Dkt.

_____

[5] The proposed Defendants were all employees at the CCADC while
Defendants Sutherland and Travitz were perpetrating their assaults.  (See Proposed
Third Am. Compl., Dkt. [108-1] ¶ 20.)  They include: Colonel Janet Prince, Major
Gary Dennis, Major Vincent Smith, Major Joseph Barger, Lieutenant Michael
Tankersley, Sergeant Demetress Patrick, Deputy Queenesta Neville-Belle, Deputy
Nadja Alexandra Bauer, and Deputy Jenna Hall Duncan. (Id. ¶¶ 10-18.)

[6] Sheriff Warren also argues that, in addition to satisfying Rule 15(a)(2),
Plaintiffs must show good cause to amend under Rule 16(b)(4) because they filed their
motion after the deadline set out in the Court's March 3, 2015 Scheduling Order.  A
review of the Joint Preliminary Report and Discovery Plan ("Preliminary Report"),
however, reveals that Plaintiffs gave notice of their intent to amend the pleadings after
the end of discovery.  (Dkt. [55] at 8.)  Because the Court did not expressly address
this aspect of the Preliminary Report in its Scheduling Order, the Court will not
require Plaintiffs to show good cause.

AO 72A
(Rev.8/82)

[111].)  Plaintiffs have filed nothing in reply.  The Court will summarize the

allegations as to the proposed Defendants before ruling on Plaintiffs' motion.

       *1.    Allegations in the Proposed Third Amended Complaint*

     While Plaintiffs do not allege that any of the proposed Defendants were

directly involved in any of the sexual assaults perpetrated by Defendants

Sutherland or Travitz, they do allege that the proposed Defendants either

facilitated the assaults or ignored or destroyed grievances documenting them.

        **a.     The September 1, 2012 Grievance**

     Plaintiffs first allege that many of the proposed Defendants negligently

violated jail policies by mishandling a note Latrice Jackson wrote on

September 1, 2012, which claimed that Defendant Sutherland and Plaintiff

McLaughlin were having a sexual relationship.  (Proposed Third Am. Compl.,

Dkt. [108-1] ¶ 46.)  In particular, Plaintiffs allege that Ms. Jackson gave the

note to Deputy Hall, who then passed it along to Sergeant Patrick.  (Id.)

Sergeant Patrick then took it to her supervisors—Major Dennis and Lieutenant

Tankersley—who told her not to document the allegations about Defendant

Sutherland in her incident report.  (Id. ¶¶ 47-48.)  Plaintiffs allege that Sergeant

Patrick then drafted her incident report, but did not include any language about

11

Sergeant Sutherland's sexual conduct.  (Id. ¶ 49.)  Contrary to policy at the

CCADC, Majors Smith and Dennis then failed to initial the hard copy of the

incident report.  (Id. ¶ 51.)  Ultimately, Plaintiffs claim that the report landed

on Colonel Prince's desk.  (Id. ¶ 53.)

### b.    The September 11, 2012, and October 18, 2012 Grievances

Plaintiffs next point to alleged misconduct relating to two other

grievances Ms. Jackson filed.  She filed the first one on September 11, 2012,

and the second on October 18, 2012.  (Id. ¶¶ 56, 58.)  In both, she reiterated her

concerns and complained that nothing had been done despite her past reports of

Defendant Sutherland's misconduct.  (Id.)  Lieutenant Tankersley and Major

Dennis were assigned to respond to both of these grievances, but did not, even

though both were marked "closed" in the computer system.  (Id. ¶¶ 57-59.)  As

to the September 11 grievance, Plaintiffs allege that Lieutenant Tankersley

"shoved the grievance into a drawer" and that it was not seen again until

January 23, 2013.  (Id. ¶ 57.)

Several allegations also relate to Colonel Prince.  To begin, Plaintiffs

allege that Colonel Prince was in possession of at least four copies of the

October 18 grievance, but that they have never been produced as they are "missing."  (Id. ¶ 60.)  Plaintiffs also contend that Colonel Prince ordered a deputy to go into Ms. Jackson's cell and remove her personal copies of both grievances, which were Ms. Jackson's only evidence that she had filed them. (Id. ¶¶ 61-62.)  Plaintiffs claim that Colonel Prince destroyed these grievances in anticipation of litigation.  (Id. ¶ 126.)

After receiving no response to her grievances, Plaintiffs allege that Ms. Jackson spoke to Major Dennis, Lieutenant Tankersley, and Deputy Bauer about Defendant Sutherland's inappropriate conduct with Plaintiff McLaughlin and why nothing was being done.  (Id. ¶ 64.)  But according to Plaintiffs, no one ever asked Ms. McLaughlin about the allegations.  (Id.)

### c.    Other Allegations of Misconduct

The remainder of Plaintiffs' new allegations revolve around proposed Defendants facilitating Defendant Sutherland's abuses.  First, Plaintiffs allege that sometime between February 4, 2012, and January 17, 2013, Deputy Neville-Belle removed Plaintiff McLaughlin from M-Pod so that Defendant Sutherland could sexually assault her.  (Id. ¶ 44.)  Similarly, on December 23, 2012, Plaintiffs allege that Deputy Neville-Belle removed Plaintiff McLaughlin

AO 72A
(Rev.8/82)

from her cell and turned her over to Defendant Sutherland, upon his request, even though his shift had already ended.  (Id. ¶ 69.)  Deputy Hall was allegedly present when Defendant Sutherland came to pick Plaintiff McLaughlin up, but did not intervene even though she knew that inmates had accused Defendant Sutherland of sexual misconduct.  (Id. ¶ 70.)

Based on all the allegations described above, Plaintiffs claim that the proposed Defendants knew that Defendants Sutherland and Travitz were sexually abusing inmates, but failed to stop the assaults by failing to enforce or comply with policies at the CCADC.  (Id. ¶¶ 106-07.)  Moreover, Plaintiffs claim that the proposed Defendants "engaged in systematic corruption by hiding and/or destroying documents which revealed the sexual assaults committed by Defendant Sutherland."  (Id. ¶ 98.)  Thus, Plaintiffs wish to add claims against the proposed Defendants for: (1) violation of Plaintiffs' Eighth and Fourteenth Amendment rights through the negligent enforcement of jail policies and procedures under § 1983; and (2) state law negligence.[7]  (Id. ¶¶ 79-

---

[7] Plaintiffs articulate the state law negligence claims as violations of O.C.G.A. § 51-1-2 for negligent performance of ministerial job duties.  (Proposed Third Am. Compl., Dkt. [108-1] at 44-45.)  But that statute merely defines "ordinary diligence" and "ordinary negligence."  See O.C.G.A. § 51-1-2.  Thus, the Court construes these as negligence claims.

87, 143-46.)

2.    *Plaintiffs Unduly Delayed in Filing Their Motion*

Plaintiffs give only one reason why they waited so long to file their motion: they only recently learned many of the facts supporting their claims through discovery.  (Pls.' Mot. for Leave to Amend ("Pls.' MTA"), Dkt. [108] at 9-10.)  The Court does not, however, find this persuasive.

Plaintiffs claim that they did not have the identities of the proposed Defendants or knowledge of their misconduct when they filed the previous complaints.  (Id. at 1-2.)  Yet in the original Complaint, Plaintiffs named at least two of the proposed Defendants: Deputy Bauer and Major Dennis.  As to Deputy Bauer, they alleged that "Sergeant Sutherland was assisted by at least two other Sheriff's Deputies (Ms. Adams and Ms. Bauer)."  (Compl., Dkt. [1] ¶ 19.)  And as to Major Dennis, Plaintiffs alleged that Ms. Jackson informed several people, including Major Dennis, that Defendant Sutherland was having a sexual relationship with Ms. McLaughlin.  (Id. ¶ 22.)  Plaintiffs then repeated nearly identical allegations in the Second Amended Complaint.  (See Second Am. Compl., Dkt. [26] ¶¶ 44, 47.)

Likewise, Sheriff Warren named at least seven of the proposed

15

AO 72A
(Rev.8/82)

Defendants in his initial disclosures, which he filed on March 3, 2015.  He indicated that Colonel Prince, Major Dennis, Lieutenant Tankersley, Sergeant Patrick, Deputy Duncan, Deputy Bauer, and Major Smith all might have information as to his defenses.  (Def.'s Initial Disclosures, Dkt. [56] at 9-12.) And Plaintiffs listed all of the proposed Defendants in their Amended Witness List, which they filed on July 17, 2015.  (Pls.' Second Am. Witness List, Dkt. [99].)  While this does not mean that Plaintiffs learned nothing in discovery to support their proposed claims, it certainly detracts from the credibility of their argument that, until very recently, they were unaware of even the proposed Defendants' identities.

Perhaps more importantly, Plaintiffs themselves provide evidence that they knew of the facts supporting their new claims long before they requested leave to amend.  Plaintiff Kendall swore under oath that the facts contained in the Proposed Third Amended Complaint were true and correct, but she did so on June 3, 2015—nearly three months before Plaintiffs filed their Motion for Leave to Amend [108].  (Proposed Third Am. Compl., Dkt. [108-1] at 50.)  The other Plaintiffs signed similar verifications on July 14, July 15, and August 15, 2015.  (Id. at 49, 51-53.)  If these statements are true, then Plaintiffs could have

AO 72A
(Rev.8/82)

filed their motion much earlier than August 20, 2015.  What is more, the allegations about Deputy Neville-Belle and Deputy Hall assisting Defendant Sutherland by turning Ms. McLaughlin over to him were certainly known to Plaintiffs even before they filed their original Complaint.  Plaintiffs would not need the benefit of discovery for Plaintiff McLaughlin to know who removed her from her cell.  See Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) (finding undue delay where the facts upon which the claims were based were available at the time the complaints were filed).

Aside from their blanket assertion that "[m]any of the facts only recently became known through the discovery process," Plaintiffs fail to explain why they delayed in filing their motion.  (Pls.' MTA, Dkt. [108] at 10.)  In fact, their entire argument section is only two paragraphs long and provides no indication of precisely when Plaintiffs learned the information needed to support their new claims or why they waited until after unlimited discovery ended to file their motion.[8]  (Id. at 9-10.)  Moreover, with so little argument supporting their motion, the Court is troubled that Plaintiffs did not file a reply brief even after

---

[8] The Court recognizes that it granted a limited extension of discovery so that Plaintiffs could depose Defendant Travitz and Major Smith, but unlimited discovery ended on August 2, 2015.  (See Dkt. [81].)

Sheriff Warren highlighted the extent of their delay.  For all these reasons, the

Court finds that Plaintiffs unduly delayed in filing their Motion for Leave to

Amend [108].

        *3.*     *Granting Leave to Amend Would Cause Undue Prejudice*

       The Court also finds that granting leave to amend would cause Sheriff

Warren and the proposed Defendants undue prejudice.  Sheriff Warren has

already filed a Motion for Summary Judgment [115] that is fully briefed and

submitted to the Court.  Granting Plaintiffs leave to amend would moot this

motion and force Sheriff Warren to file and brief a new motion.  Given the

Court's reservations about Plaintiffs' delay, it is unwilling to put Sheriff

Warren in that position.  And with discovery now closed, granting leave to

amend would mean either reopening discovery or preventing the proposed

Defendants from conducting any discovery at all.  Thus, the Court could not

avoid prejudice to either Sheriff Warren or the proposed Defendants.  See

Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008) (holding that, with

discovery closed, granting a motion to amend would have caused the

defendants undue prejudice because they could not have conducted discovery

on the new claims); Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171,

1186 (11th Cir. 2013) ("[P]rejudice is especially likely to exist if the

amendment involves new theories of recovery or would require additional

discovery.") (quotation and citation omitted).[9]

Because the Court finds that Plaintiffs filed their motion with undue

delay and that granting it would cause Sheriff Warren and the proposed

Defendants undue prejudice, Plaintiffs' Motion for Leave to Amend [108] is

**DENIED**.

## II.    Plaintiffs' Amended Motion to Compel Discovery [112][10]

Plaintiffs seek to compel discovery of an array of documents including

certain complaints Ms. Jackson made to employees at the CCADC and "10 to

12" missing grievances that Plaintiffs' counsel suspect to be reports of

inappropriate sexual contact between Cobb County Sheriff's Deputies and

inmates at the CCADC.  (Pls.' Am. Mot. to Compel Disc. ("Pls.' MTC"), Dkt.

---

[9] The Court notes that granting leave to amend would also cause prejudice to both Sheriff Warren and the proposed Defendants because they would be forced to defend against new claims even though many are likely time-barred.  This also means that the proposed amendment would be futile.  See Fetterhoff v. Liberty Life Assur. Co., 282 F. App'x 740, 743 (11th Cir. 2008) (affirming denial of motion to amend where the new claims were futile because they were time-barred).

[10] In light of this amended motion, Plaintiffs' original Motion to Compel Discovery [109] is **DENIED as moot**.

19

[112].)

Rule 37(a)(1) permits parties to file a motion to compel disclosures or discovery. FED. R. CIV. P. 37(a)(1). Such a motion is appropriate under several circumstances, including where the opposing party fails to produce documents as requested under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). A motion to compel must include a certification that the movant has made a good faith effort to confer with the opposing party to obtain the disclosure or discovery without court intervention. FED. R. CIV. P. 37(a)(1); LR 37.1(A)(1), NDGa. The Local Rules also require that the movant: quote verbatim the request to which objection is taken; state the specific objection and its grounds; and cite authority and reasons supporting the motion. LR 37.1(A)(2)-(5), NDGa.

At its core, Plaintiffs' motion fails to comply with the Local Rules. Plaintiffs identify three discovery requests as the basis of their motion: Requests for Production 7, 10, and 11. Plaintiffs quote language from these requests in the beginning of their motion, but never reference them again. Nor do they state their objections with any specificity. To the extent Plaintiffs raise objections, they are scattered throughout the motion and it is often unclear which discovery request Plaintiffs are referencing. This will not do under the

Local Rules.  See LR 37.1(A), NDGa ("The motion shall be arranged so that the objection, grounds, authority, and supporting reasons follow the verbatim statement of each specific disclosure . . . or request for inspection to which an objection is raised.").  Plaintiffs also fail to cite sufficient supporting authority. Throughout their entire motion, Plaintiffs cite only a single case from the Tenth Circuit: Centennial Archaeology, Inc. v. Aecon, Inc., 688 F.3d 673 (10th Cir. 2012).  And Plaintiffs do not even rely on Aecon to support the substance of their Motion to Compel, but merely to prop up their claim for attorneys' fees related to filing it.  (Pls.' MTC, Dkt. [112] ¶¶ 34-39.)  Given the other deficiencies of Plaintiffs' motion, the Court finds this lone citation insufficient. See LR 37.1(A)(5), NDGA (requiring the movant to "[c]ite authority and include a discussion of the reasons assigned as supporting the motion").  For all these reasons, Plaintiffs' motion fails to comply with the Local Rules and is due to be denied.

Nonetheless, the Court will address the merits of the motion by analyzing each Request for Production that Plaintiffs cite.[11]  The first is

---

[11] In addition to those discussed below, Plaintiffs' motion references a wide range of documents that Sheriff Warren allegedly failed to produce.  For example, Plaintiffs seek "pod logs" for the period between January 1, 2012 through January 17,

Request for Production 7, which Plaintiffs quote as follows: "Produce all documents pertaining to gathered by [sic] Cobb County while investigating Alvin Sutherland, [or] Christopher Travitz . . . including but not limited to Internal Affairs investigative reports." (Pls.' MTC, Dkt. [112] at 4.) Based on this Request, Plaintiffs seek to compel production of "10 to 12" grievances that Lieutenant Tankersley found in a file cabinet on January 23, 2013. (Id. at 7.) Ms. Jackson authored at least one of these "missing" grievances, and Plaintiffs speculate that all of them reported inappropriate sexual contact by Cobb County Sheriff's Deputies and inmates at the CCADC. (Id. at 9.) According to Plaintiffs, these grievances fall within the scope of Request for Production 7, yet were never produced.

But Sheriff Warren already fully complied with Request for Production 7. On April 1, 2015, Sheriff Warren responded to the request by agreeing to produce all documents gathered while investigating Defendant Sutherland.

─────────────────────

2013. (Pls.' MTC, Dkt. [113] at 11-12.) Plaintiffs fail, however, to link any of these documents to Requests for Production 7, 10, or 11, which are the only discovery requests cited in the motion. Without knowing how documents fit in with Plaintiffs' discovery requests, the Court cannot decide whether to compel their production. Thus, the Court will limit its analysis to only those documents expressly linked to Requests for Production 7, 10, or 11.

AO 72A
(Rev.8/82)

Sheriff Warren later supplemented this response on numerous occasions,

producing a total of over 2,700 documents relating to both Defendants

Sutherland and Travitz.  (Def.'s Resp. to Pls.' Mot. to Compel Disc. ("Def.'s

MTC Resp."), Dkt. [113] at 4, 19.)  Among those documents were all

grievances from January 2012 to January 2013 except for any containing

medical information.  (Id. at 19 n.10.)  After Lieutenant Tankersley located the

"missing" grievances, they were processed normally.  (Prince Mem., Dkt. [112-

5] at 1.)  Thus, it is likely that most, if not all of the "missing" grievances are

included in the documents Sheriff Warren already produced.  (Def.'s MTC

Resp., Dkt. [113] at 19 n.10.)  As Sheriff Warren already complied with

Request for Production 7, there is nothing for the Court to compel.

Next are Plaintiffs' Requests for Production 10 and 11.  The language of

these requests is as follows:

- Number 10: "Produce all documents pertaining to any and all complaints, regardless of the format that the document and or information is retained or stored, that was filed by Latrice Jackson and / or any other C[C]ADC inmate regarding Alvin Sutherland or any other employee at CCADC."  (Pls.' MTC, Dkt. [112] at 1-2.)

23

- Number 11: "Produce all documents pertaining to information related to Latrice Jackson's complaints to CCADC employees." (Id. at 1.)

While these are separate requests, Number 11 seeks documents covered by Number 10, so the Court will analyze them together.

Based on these two requests, Plaintiffs seek: (1) a copy of the grievance Ms. Jackson filed on October 18, 2012; and (2) the second of two notes she allegedly wrote about Defendant Sutherland having a sexual relationship with Plaintiff McLaughlin. (Id. at 2, 7.) Sheriff Warren has made clear, however, that he is not in possession of either of these documents. (Def.'s Sixth Suppl. Resps. to Pls.' Req. for Produc. of Docs., Dkt. [113-7] at 4-5.) He concedes that the October 18, 2012 grievance exists and was logged, but he has failed to uncover a copy despite an extensive search. (Def.'s MTC Resp., Dkt. [113] at 20.) As for the second note, Sheriff Warren is not even aware that such a note exists, much less that it is in his possession. (Id. at 21.) In short, he produced all responsive documents in his possession.

Because Plaintiffs' motion fails to comply with the Local Rules and because the Court finds that Sheriff Warren has already fully complied with Requests for Production 7, 10, and 11, Plaintiffs' Amended Motion to Compel

24

Discovery [112] is **DENIED**.

**III.    Sheriff Warren's Motion for Summary Judgment [115]**

   A.    Legal Standard

   Rule 56 requires that summary judgment be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving

party bears 'the initial responsibility of informing the . . . court of the basis for

its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits,

if any, which it believes demonstrate the absence of a genuine issue of material

fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir.

2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal

quotations omitted)).  Where the moving party makes such a showing, the

burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

   The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Moreover, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences that are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

B.    Analysis

On November 5, 2014, the Court dismissed all claims against Sheriff

Warren except for Plaintiffs Kendall, McLaughlin, and Brook's § 1983 deliberate indifference claim against him in his individual capacity.  (Dkt. [51] at 42.)  Sheriff Warren now moves for summary judgment as to that claim, arguing that he did not have subjective knowledge that Defendant Sutherland was going to act unlawfully and that, as such, he is entitled to qualified immunity.

### 1.   *Qualified Immunity and the Eighth Amendment*

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  Id. at 1358.  Just as it did in its previous Order, the Court finds that

27

Sheriff Warren was acting within his discretionary authority in managing the jail and supervising deputies.  (See Dkt. [51] at 24.)

Next, whether an official is entitled to qualified immunity is determined by a two-step inquiry: One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)).  "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).

To show a violation of an inmate's rights under the Eighth Amendment,[12]

---

[12] "The Eighth Amendment applies to convicted inmates.  A pretrial detainee's 'constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment.'" Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995)).  "'[T]he standard[, however,] for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'" Id. (quoting Marsh v. Butler County,

"Plaintiff  must 'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation.'"  Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005) (quoting Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995)).  "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. at 1319-20 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  In other words, deliberate indifference requires "(1) *subjective* knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Goodman v. Kimbrough, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (emphasis added).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a

---

268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc)).  Some Plaintiffs here were pretrial detainees while others were convicted inmates.  Because the applicable standards are the same for all Plaintiffs, for simplicity's sake the Court refers only to the Eighth Amendment in evaluating Plaintiffs' claim.

29

factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Farmer</u>, 511 U.S. at 842.

To establish supervisory liability for a constitutional violation against a defendant like Sheriff Warren, a plaintiff must allege that the supervisor "personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." <u>Key v. Lundy</u>, 563 F. App'x 758, 760 (11th Cir. 2014) (quoting <u>Franklin v. Curry</u>, 738 F.3d 1246, 1249 (11th Cir. 2013)).  Here, Plaintiffs do not allege that Sheriff Warren personally participated in sexual abuse, so they must show a causal connection between his actions and the alleged violation of Plaintiffs' Eighth Amendment rights.  In its previous Order, the Court found that Plaintiffs failed to allege the necessary causal connection except on one theory: Sheriff Warren knew that Defendant Sutherland would act unlawfully and failed to stop him.  (Dkt. [51] at 36.) Thus, the narrow issue before the Court is whether Sheriff Warren had subjective knowledge that Defendant Sutherland would act unlawfully at the time of each assault, yet failed to intervene.

> 2.    *Did Sheriff Warren Have Subjective Knowledge?*

Plaintiffs' brief is full of allegations about sweeping misconduct at the CCADC.  Plaintiffs use these allegations to argue that Sheriff Warren knew or should have known about Defendant Sutherland's misconduct and that he violated Plaintiffs' constitutional rights by failing to take action.  Ultimately, however, Plaintiffs cite nothing in the record revealing that Sheriff Warren had any idea about Defendant Sutherland's sexual assaults until January 2013, at which time Defendant Sutherland was promptly investigated, terminated, and arrested.

Plaintiffs' first argument does not relate to Defendant Sutherland at all, but instead centers around Sheriff Warren's alleged knowledge about Defendant Travitz.  Around November 5, 2010, Plaintiffs claim that several inmates made verbal complaints to the CCADC staff about Defendant Travitz having an inappropriate relationship with an inmate named Jessica Whitaker. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' MSJ Opp'n"), Dkt. [116] ¶ 15.)  This resulted in an internal affairs investigation, but Plaintiffs claim that Defendant Travitz engaged in sexual activity with a number of individuals at the CCADC even while the investigation was ongoing, including Plaintiffs Mitchell and Daley.  (Pls.' MSJ Opp'n, Dkt. [116] ¶ 23.)  On November 8,

31

2010, Sheriff Warren received a memorandum advising him that Defendant Travitz was subject to this investigation for sexual misconduct.  (Mem., Dkt. [116-5].)  Based on his receipt of this memorandum, Plaintiffs seem to argue that Sheriff Warren knew not only that Defendant Travitz posed a threat to Plaintiffs, but also that Defendant Sutherland posed a similar threat.

There are three problems with Plaintiffs' argument.  First, as discussed above, the Court already dismissed any claims against Sheriff Warren based on Defendant Travitz's misconduct.  (Dkt. [51] at 28.)  To the extent Plaintiffs' argument is an attempt to restate those claims, they are barred from doing so. Second, the question before the Court is whether Sheriff Warren had subjective knowledge that Defendant Sutherland was dangerous, not Defendant Travitz. Even if the November 2010 allegations against Defendant Travitz were true, they would not put Sheriff Warren on notice of any possible misconduct on Defendant Sutherland's part.  Finally, the officials investigating Defendant Travitz ended their inquiry after determining that the claims against him were unfounded.  (Beck Decl., Dkt. [115-13] ¶ 41.)  Thus, even assuming that Sheriff Warren could somehow infer that Defendant Sutherland would engage in sexual misconduct if Defendant Travitz already was, Sheriff Warren

ultimately had no reason to believe that Defendant Travitz was engaging in such conduct in November 2010.

Plaintiffs next argue that Sheriff Warren knew about Defendant Sutherland's misconduct because of Ms. Jackson's grievances. (Pls.' MSJ Opp'n, Dkt. [116] ¶¶ 38-39.) Plaintiffs claim that Sheriff Warren must have seen these grievances because he admitted that these types of allegations would have been brought to his attention. (Id. ¶ 39.) Plaintiffs present no evidence, however, that Sheriff Warren actually received these grievances. In fact, they appear to concede that these grievances were mishandled, meaning that they were not passed up along the chain of command. (Id. ¶¶ 48-49.) And Sheriff Warren presents evidence to precisely that effect. (Beck Decl., Dkt. [115-13] ¶ 79-83.) In his Declaration, Chief Deputy Beck specifically states that "[b]ecause the initial Jackson letter and grievance were not properly processed, neither one was brought to the attention of the Command Staff, including Sheriff Warren, until *after* Sutherland was arrested on January 17, 2013." (Id. ¶ 83.) As for Ms. Jackson's second grievance (filed on October 18, 2012), Chief Deputy Beck states that no copy has ever been found even though Defendant Warren does not dispute that Ms. Jackson filed it. (Id. ¶ 53.)

33

Plaintiffs appear to agree, as they have moved to compel its production.  (Pls.'

MTC, Dkt. [112 at 2.)  In the absence of any evidence that Sheriff Warren

actually received Ms. Jackson's grievances, Plaintiffs cannot rely on them to

show he had subjective knowledge of Defendant Sutherland's misconduct or

that he was a threat.

Finally, Plaintiffs allege that there was a pervasive atmosphere of

obvious sexual misconduct at the CCADC such that Sheriff Warren should

have known that Plaintiffs were at risk of sexual assault.  (Pls.' MSJ Opp'n,

Dkt. [116] ¶ 64.)  After reviewing the record, the Court is convinced that many

employees at the CCADC were engaged in misconduct and that it was indeed a

dangerous atmosphere or, at the very least, an unprofessional one.

Nonetheless, for Plaintiffs to show a constitutional violation, they must

demonstrate not just that Sheriff Warren should have known that Plaintiffs

were at risk, but that he actually knew.  Goodman, 718 F.3d at 1332 ("To be

deliberately indifferent . . . the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, *and*

*he must also draw the inference*.") (internal quotation marks omitted).  To do

so, it is not enough that Plaintiffs point to a pervasive atmosphere of

34

misconduct.  Rather, Plaintiffs must provide some evidence to refute Sheriff

Warren's contention that he no idea that Defendant Sutherland was a risk to

inmates' health and safety until after the sexual contact with Plaintiffs

occurred.  (See Warren Decl., Dkt. [115-14] ¶¶ 26-32.)  They have not,

however, managed to do so.

 In fact, Sheriff Warren presents undisputed evidence that as soon as he

did know about the danger Defendant Sutherland posed, he took immediate and

decisive action.  Defendant Kendall's lawyer reported her client's rape on

January 16, 2013.  (Def.'s SMF, Dkt. [115-2] ¶ 52.)  The very next day,

command staff initiated an investigation and interviewed Defendant

Sutherland.  (Id. ¶¶ 52, 55.)  Immediately following this interview, Sheriff

Warren terminated Defendant Sutherland's employment with CCSO.  (Warren

Mem., Dkt. [115-14] at 21-22.)  Thus, in the one instance where Sheriff Warren

clearly had actual knowledge of Defendant Sutherland's misconduct, he acted

immediately to protect the inmates at the CCADC.

 Aside from bare allegations, Plaintiffs offer no evidence that Sheriff

Warren knew about the risks Defendant Sutherland posed.  The record is full,

however, of evidence indicating that no complaints or grievances about

35

Defendant Sutherland made their way to Sheriff Warren until January 2013. Thus, the undisputed evidence shows that Sheriff Warren did not have subjective knowledge that Defendant Sutherland was a risk to inmates at the CCADC until after he assaulted Plaintiffs. As such, Plaintiffs cannot show a constitutional violation and Sheriff Warren is entitled to qualified immunity as to Plaintiffs' § 1983 deliberate indifference claim. Sheriff Warren's Motion for Summary Judgment [115] is therefore **GRANTED**.

## Conclusion

In light of the foregoing, Plaintiffs' Motion to Compel Discovery [109] is **DENIED as moot**. Plaintiffs' Motion for Leave to Amend the Second Amended Complaint [108] and Amended Motion to Compel Discovery [112] are **DENIED**. Sheriff Warren's Motion for Summary Judgment [115] is **GRANTED**. The parties are **ORDERED** to submit a proposed consolidated pretrial order within thirty days.

**SO ORDERED**, this 31st day of March, 2016.

**RICHARD W. STORY**
United States District Judge

36